Good morning, Your Honors. My name is Brian Bromberg. I may please the Court. I represent the intervener appellant, Cassandra McNair-Stepney, on this appeal. Your Honors, this case is about whether the rights of a class member who has been actively litigating her case in state court for years can have her rights wiped out without receiving any individual notice. Ms. McNair-Stepney had been litigating her case in Illinois State Court since 2008. Can I ask a question? Sure. Why isn't the determination of the Illinois State Court issue preclusion on the same question in this case? I mean, didn't the Illinois State Court decide that a notice was adequate and dismiss the case for that reason? Yes, but they also said that if the State Court also said, if you want to take up this matter, you should go to California and take up this matter in front of the It hasn't been raised, so it's probably by the boards, but it seems to me that the Illinois State Court decided this very issue. It's the exact issue. You're raising it with us. There's a motion for reconsideration pending, Your Honor, and we've also mentioned to Now, years later? Yes, it's still been pending. The Illinois State Court, my recollection is, the Illinois State Court has been waiting on the motion for reconsideration, awaiting to see what happens here in California. So essentially there's no final judgment in Illinois State Court. Exactly. There's no final judgment in Illinois. And again, they said, you know what? This is not the appropriate place to take this up. You should go to California and deal with this issue. That's not the case. They must have thought it was the appropriate place to take it up. Well, they dismissed the case on the grounds that they believed there was a final judgment here that had to be, or at least some kind of final preclusion here that had to be dealt with by the court here and that the appropriate place to take it up was not in Illinois, that we should come out here, which is precisely what we did. We came out here and we, at which point we learned a number of things. We learned in the Illinois case that the notice that had been sent to the attorney for Ms. McNair Stepney had been sent to the wrong address, and therefore it, of course, never been received, and therefore they don't get the presumption. Is there any allegation that it wasn't received? Yes, there is. I died and they didn't really know, and nobody really knew whether it had been received. It wasn't returned. Well, the declarations say that it was never, that there was no evidence that it was received. They never said it wasn't received. I thought they just said we can't find it. Yes, but they check their mail every day. It's a law office. They talked about their procedures and practices. Something about the person who got the mail wasn't there. I mean, I thought the net result was that because the guy died and because the office was in disarray at the time, nobody really knew whether it had been received. Oh, no, there was no allegation that the office was in disarray. But it probably doesn't matter, but go ahead. Okay, he was partners with his wife, and his wife, while he was ill, was checking the mail every day and making sure that nothing slipped through, and any matters that would come in she would give to attorneys who dealt with that particular field of law. So she was keeping on top of things, and there's no evidence whatsoever that it was received. And again, if you send a piece of mail to the wrong address, you don't get the presumption of delivery. We can't speculate on what happened to the document. All we know is that it wasn't received and that the defendants and that Toyota says they never got it back in the mail. Because it was addressed to the wrong address, we can't speculate whether it was received or not received because there's no presumption that it was received. Can I ask you, when did your client or your client's other counsel first learn that this settlement had occurred in California that she had failed to opt out of? Well, they first learned in 2013 at a settlement conference, and then it wasn't until then Toyota waited a year until they made their motion for summary judgment, and that's when they saw a copy. Okay, so you guys found out in 2013? Yes. You had failed to receive. I mean, obviously you knew immediately, well, we never received notice of this, right? It came as a shock to find out that the whole case had settled and you had not been given an opportunity to opt out. It came as a shock, but when you're told by an attorney, we mailed the notice to you, you never opted out. And then it wasn't until 2014. But why didn't you immediately go to the federal district court here and say, hold on, Your Honor, we've just learned today or yesterday that this settlement had occurred, and we are here to tell you that we never received that notice and we'd like to be given more time to opt out or something. Well, it never occurred to anyone, Your Honor. I mean, you waited two years then. You waited two years before taking any action out here, and I guess I don't understand why. Oh, no, no. In 2014, there was the motion for summary judgment in state court. Right. Okay? So, well, hold on, hold on. We never took any action out here because at first there was the motion for summary judgment in state court. But you knew that there was a final judgment that had been entered in the case here, that your client was a member of that class. You had not opted out. You had to know that they were going to invoke that as a bar to any further litigation in Illinois, and you waited two years before seeking to basically get relief from the judgment? I guess I don't. I'm just trying to figure out why would you do that. Well, essentially what happened, Your Honor, is when they were told by Toyota at the settlement conference, we sent you the notice, your people never opted out. I believe the attorney in Illinois had already passed away. Right. The attorney who had taken over the matter said... Oh, wait, wait, wait. That's why I was surprised when you said you first found out in 2013 because I have in my notes that the attorney passed away July 8th of 2014. Oh, excuse me. Excuse me. We found out. I'm trying to remember the exact date when we found out. There was the settlement conference that took place at which they mentioned that there had been a settlement in the case here and there had been notice. It may have been 2014, Your Honor. I'm sorry. I'm sorry if I misspoke. Does all of this ultimately matter? I mean, isn't the case law essentially that as long as they tried and got almost everybody notified as they did here and they had a lot of publication notice, and on top of all that this was, I mean, I probably knew about this even though I had nothing to do with it because it was an extremely well-publicized set of litigation. I mean, it's just sort of not credible that somebody who was litigating a Toyota case didn't know about the Toyota settlement. It just doesn't seem possible. Well, Your Honor, the case law says, it's the U.S. Supreme Court and the Eisen case, individual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort. Yeah, but there are later cases which try to spin out exactly how accurate that has to be, and it appears that it has to be quite accurate. If you reach a vastly predominant part of the group, which they did here, and you do the publication notice, which they did here, why, it doesn't need to be perfect, does it? Well, Your Honor, I haven't found any case that's quite like this where there had been litigation for five years where the notices that were sent out were sent to the wrong addresses despite actual knowledge of the correct addresses. But here, it was a typographical error of some sort, one digit. No, it was more than, oh, sorry. One digit that was off in the address, as I understand it. In the address that was sent to the lawyer, the notice that was sent to the lawyer, it was off by one digit. We don't know where it went. But that's the one I'm talking about. So, I mean, to prevent that from occurring, if the requirement is that you must never have a typographical error in a notice that is sent out, you would have to have somebody double-check each and every piece of mail before it went out. It seems to me to be unreasonable when the standard is not perfection. I'm not sure that it's unreasonable when you're talking about a case that had been pending for five years. I mean, they certainly knew where to send motion papers. They certainly knew where to. . . I mean, yes, if you think the corporation is a person, and some of us do, but, in fact, it's a whole lot of different people doing different things. It is a whole lot of different people doing different things, but that wasn't the only place where they dropped the ball. The obligation is actually to send the individual notice to the class members, and here they messed that up as well. The notice should have gone. . . Quite understandable, isn't it? I mean, they sent it to the address they had at the time. Well, except. . . Because they used DMV, and that's where the car was. Well, no, no. The car had been. . . They had brought a spoliation motion. They knew the car was in the hands of the salvage yard. They knew that our client no longer had it. They had actual knowledge of that. My understanding of what happened is that they sent the notices to the addresses they got from DMV. They did. And that was the address they got from DMV. That was the address they got from DMV, but the lawyers in Illinois had taken two depositions. . . Right. The left hand didn't know what the right hand was doing because they were completely different people doing different things. Yes, but then you're basically excusing them for sending out 20. . . for committing vast products liability problems. You're basically rewarding them for not being careful. I mean, that's a problem, Your Honor. That's really what the result of this is. Because we sent out . . . They had a backup system, which is if mail was returned, they would then deal with it, and apparently dealt with hundreds of thousands of those. I mean, this is just a weird case because the mail wasn't returned. The first one wasn't returned because I guess the salvage yard didn't return, and the second one wasn't returned. We don't know why. This is a weird case, Your Honor. I would absolutely agree. This is . . . I have not found . . . You've just pointed to the other cases that have been in the . . . May I take one second, Your Honor? You've pointed to the other cases in the briefs, the in-rate gypsum. There's the Weller v. HSBC. No case is quite like this. This is something out of a civil procedure class in law school because you had a case sitting there that they knew about for five years, that everyone had been actively litigating, that they had actual knowledge of the correct addresses, and they got it wrong. They blew it. And I'd respectfully request that they be allowed to keep their rights, Your Honor. Okay. Thank you very much. Good morning, Your Honors. Ray Cardozo for the Toyota Appellees. And I'd like to address a couple of points, picking up on Judge Berzon's comments about why none of the mistakes actually matters under the controlling law. Before I do, I just want to correct, point you, Judge Watford, to the point of the record that you're asking about. If you look at excerpts of Record 114, that's where the evidence is that they learned in August 2014. And then the motion is brought in December 2015. Tell me what exactly that has to do with the due process problem. It's a latches or what? Yeah, because there was a final judgment entered in the action. Between those two periods? Yeah, it was entered in June 2013. So when you find out. So it's not in between those two periods. It's not in between those two periods, but the case law is very clear that when you find out, and this is Court Silber's decision, makes this point. When you find out, you've got to get into court right away. So that is one stand-alone ground the long period of time. You have the option of taking a run at it in the state court if you choose, but you do so at peril of waiving. I assume they could have pursued both avenues simultaneously. They could have done it simultaneously and so on. There's no excuse whatsoever for not running there, and that's a stand-alone ground for affirmance right there. But you don't even need to reach that ground because of the points that Your Honor Judge Berzon and Judge Flynn were getting at. The standard is very well settled for due process. You look at the notice program as a whole and whether it makes reasonable efforts to get to the class as a whole, and it includes tolerance for imperfection and mistakes of necessity. Yes, but I guess help me with this. All of the cases that I've seen, the imperfections are not really the fault of the, let's just say the defendant, your client, right? We had the wrong address in our files, but it would have taken exorbitant effort to track down each individual person to make sure that that was the correct address. So we sent it to the address we had. If there was a mistake in the address, that's not our fault. Things like that, right? I haven't found any case like this one where you all actually had the correct address but you guys screwed up and mailed it to the wrong address. And so it seems to me the party that's at fault for the mistake might be a relevant consideration in the due process analysis. Two points, one on precedent in our cases and two on principle. We've cited, Your Honor, at least three district court decisions in which there was a similar left-hand, right-hand problem. The defendant had the right address somewhere, but it's a massive program. And that's the Gross case in Florida where the plaintiff had told the bank, updated the address, told the bank, here's my new address. The class action administrator sent it to the old address. So similar left-hand. It's in the files. It's in the defendant's possession, the correct information. Well, no, I guess I don't think that. I didn't view that case as that similar. First of all, it's not binding, so I don't really pay that much attention to district court cases anyway. But there the bank, I guess, had an address on file, right? And I assume it just used whatever that database was to send out all the notices. And so I do understand why some individual person, I don't know if there were hundreds of thousands, but some individual person is trying to lob in a new address and it just doesn't make its way. Again, that's just like the amount of resources that would have to be invested to make sure that we double-check this database to make sure it was correct. That would be unreasonable. Here, though, as I understand it, your client decided, or whoever decided to construct this notice program, decided to send notice to counsel for all of the people who were in active litigation. And the only address you all had in the database to begin with was the correct one. And it's just for whatever reason that got screwed up through a typographical error. I'm not sure mistakes are made. But all of the fault is really with your client. That's how I guess I see it. So why am I seeing it wrong? Because you're – but the principle has to be the same and it has to be the same analysis. You've got 22 million class members, including many, many people with individual lawsuits. This was a massive thing. And so it is impossible to have a situation where you're not going to have a typo. And if you don't, one of the reasons why – Let me just ask this. Let's say that you made a typo in every single one, right? Does that – you just say, well, hey, typos occur even though – so we've sent out 22 million notices. We screwed up the addresses on all of them. We had the correct address, but we sent every single one of those to the wrong address. And it turns out that half of these damn people never found out about this. You would say, oh, hey, sorry, just, you know, typos occur. No, no, of course not. But that's one of the factors the district court considered in its exercise of discretion is what degree of compliance do we have in the program as a whole? How, you know, are they pulling this out of left field or was this a rigorous effort and nonetheless a mistake made? Is the standard the reasonableness of the mode of notification? In other words, the reasonableness of the program as a whole? Yeah, absolutely. Or the reasonableness of the individual notice consistent with the obligation under EISEN to provide individualized notice? There's two problems. First, this court's decision in Silber makes clear that it's the reasonableness of the program as a whole. And every case that we've cited across the country, albeit many being district court decisions, but every single jurist who's looked at this problem since Silber, many relying on Silber have said it's the reasonableness of the program as a whole. How is that consistent with the obligation flowing under EISEN to provide individualized notice? Because EISEN, you've got to remember the issue in EISEN is whether the defendant can blow off individual notice as a whole. EISEN didn't consider at all the issue of individual mistakes made. In EISEN, the defendant argued, we don't have to give individual notice to anybody. It's too costly. And the court said, no, you've got to make a reasonable effort to give notice as a whole. Did the district court rely at all on the timing question in denying the 60B? The district court did not. I would describe that as a situation where it simply didn't reach it. It didn't need to reach it. We can't affirm them on that ground. It's an abuse of discretion standard. If that wasn't the basis on which he exercised his discretion, presumably we don't rely on it. You could because there was absolutely no ground or reason, and you heard it again today. Was this a 60B-6? They didn't articulate which ground for relief. It had to be because it's more than a year after the trial. It was more than a year, and they didn't articulate any ground. And you just heard it here this morning. There was no reason or rationale. So it falls into one of those situations where, although the district court didn't reach it, you can still affirm because it's— I'm sorry, but it seems that when we're dealing with something as discretionary as 60B-6, it seems hard to do that. Fair enough. It obviously has to be a clear-cut case where discretion can only be exercised in one way. I think in a situation where you're more than a year and there's no conceded in court this morning, there's no rational ground for it, you can do it. But, again, you don't even need to reach that point because the standard is clear. It's reasonableness as a whole. Every single case has done that, including not just in Gross. Well, the Silver case is the case that I found most interesting. Obviously, it's the only case we have really from our court that sort of speaks to this. But you're right that there's an initial analysis in Section 3 of the opinion that deals with the due process question writ large, and it does say that you look at the adequacy of the program as a whole. But then in Section 4 of the opinion, the court goes on to do a much more individualized analysis that basically seems to suggest that we weigh a whole bunch of factors, one of which, as I said, is whose fault was it that this individual person did not get the notice. And one of the other factors is how long, you know, how diligent were they once they found out about the mistake and that kind of thing. But it seems to me kind of a totality of circumstances type analysis that I don't know that the district court really did that here. That's really what gives me the most pause about affirming. Well, Your Honor, actually the district court did do that analysis. It's important to remember they didn't even make the contention on Prong 2 in Silber. They argued this was a violation of due process, so it's void as a matter of law and you don't get to Prong 2. That's why you haven't heard the words discretion or abuse of discretion anywhere in their briefs. They didn't even make an argument on Prong 2. The district court, nonetheless, without that argument even being made, considered all of the factors in Silber, the degree of compliance in the program as a whole. Because when you're talking about whose fault it is, as you pointed out earlier, is this a one-off or is this a systematic? No, I don't think that's what the court was talking about in Silber. There was a mistake made and everyone recognizes that mistakes occur, but who do we ascribe the fault to? I mean, it could be, for example, that the plaintiff gave the wrong address and never updated it. And you'd say, well, yeah, a mistake was made. You didn't get the notice, but it's your fault. We're not going to tag the defendant with that. But what the court suggested in Silber was that a defendant who is at fault for the notice not getting to the person doesn't have any reliance interest in the finality of that judgment. That's just kind of a basic notion of fairness. I know you want to come in and say, look, my client thought this was wrapped up. We paid out the settlement. This has to be done. And what that analysis suggests is that, well, no, if it's your fault for not notifying someone, maybe you don't have a strong interest in the finality of that judgment. Right, but Silber didn't say that's the sole or that factor is dispositive. I agree. And it included an assessment of sort of the degree of fault. So this kind of – Can we go back to the timing question? Sure. Briefly. It was never specified whether this was 60B6 or what. But it could have been 60B4, right? The judgment is void for lack of notice. Right. The only argument that was made was that it was void. There wasn't any argument made other than that. Other than what? Other than it was just void. Well, if it's void, then there is no one-year limitation, right? Correct. But we're assuming we're past void and into an analysis. And it doesn't say even a reasonable time. The motion under Rule 60B must be made within a reasonable time. Well, yes, it does. All right. So it has to be a reasonable time. Right. The point is the Silber analysis Judge Watford is talking about is not a judgment's void. That's an appeal to the district court's discretion. 60B6. Yes. I don't even think that's on the table because they went solely on void in this case. But they asked for relief from the – I mean, I don't know. It's an equitable appeal to the district court's discretion saying, listen, you have the authority to give me relief from this judgment. Here, in fairness, is why you should do that. And they lay out the circumstances as to why they didn't get notice. It seems to me that's got to be a 60B6 type appeal. Yes. And if it is, then the timing counts. So we're just going back and forth on this. The timing doesn't count if we're just under void. Okay. Got it. But if we're under 60B6, the timing most certainly counts. And I'm sure you noticed, Your Honor, in Silber, that that plaintiff moved within eight days of learning. I agree. And critically for purposes of this motion, that plaintiff moved before the judge had finally approved the settlement. There was no prejudice to the defendant whatsoever. Okay. In a case like this, the fund is distributed. I know. The prejudice is extreme. Perfection is not the standard. Okay. The time is up. You may have a minute or so. Thank you, Your Honor. Very quickly, we did not receive the evidence showing that the notice had gone to the wrong address until we received the motion for summary judgment in state court. When was that? The motion was, I'm sorry, Your Honor, I have it right here. That was in 2014, I believe. Right. And you filed it a year later or so. And you filed this case a year later or so? Well, it was after we had already litigated the issue before the state judge, we filed this action when the state judge said, you know what, go deal with this matter in California. In addition, we didn't find out about the mailing of the notice to the salvage yard until we saw the response of papers to our motion in the district court here. So, in other words, that was the very first time we realized there was an allegation that notice had been sent directly to our client, and it seems like they kind of hid that because that's when we first learned that it hadn't actually gone to our client. It had gone to a salvage yard, which goes back to the issue of the reasonableness of the program as a whole. You have cars that you know are having problems, and you know that they are running into ditches, and you know that they are going to salvage yards, which is actually what happened to our client, and meanwhile you have a process set up where notices are being sent to salvage yards when the problem is with cars that are being totaled and people that are getting injured. So there seems to be a problem with the entire process that was set up by Toyota to deal with the settlement. Finally, there's no reasonable expectation that you go and look at Parade Magazine. If you are involved in litigation, you don't go to the sales circular in the back of the Sunday paper. The newspaper, though, about the fact that there's a settlement on the very issue that you're litigating in Illinois. Exactly. You'd expect to receive a notice. You don't expect to have to go. I don't know if you expect, but you certainly would expect to read the newspaper. But not the sales circular, Your Honor. It is a peculiar situation. It is not terribly credible that you didn't know about it. I guess, can I just ask? Sure. That is one way of looking at it. I guess the other way would be to say that it's entirely credible because I think under the settlement, your client was going to get like $100, and you had this litigation for five years. I can't imagine how much your predecessors invested in terms of attorney's fees in that. There's no way if you had known about the settlement that you wouldn't have opted out, right, to preserve your right to pursue whatever relief you were seeking in Illinois. You wouldn't just get stuck with $100. That would make no sense. It would make absolutely, Your Honor. If we had known that we thought the notice had gone to the right place and had somehow slipped through people's fingers, it was only when the summary judgment motion was made in state court that we suddenly realized why no one had seen the notice, why the entire procedure had been messed up. And then it wasn't until the later time that we saw the... Thank you, Bill. Okay. I'm sorry for taking additional time. Thank you, Your Honor. Interesting argument and interesting case. McNair-Stepney v. Toyota Motor is submitted. We will take a break. Thank you. All rise.
judges: Berzon, Watford, Linn